

**SIGNED this 15th day of May, 2023**

_Shelley D. Rucker_
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

River City Resort, Inc.,
    Debtor.

No. 1:14-bk-10745-SDR

Chapter 7

Jerrold D. Farinash, *Trustee*,
    Plaintiff,

v.

James L. Henry, Jr.,
    Defendant.

Adv. No. 1:18-ap-01044-SDR

## <u>MEMORANDUM OPINION</u>

## I.  INTRODUCTION AND BACKGROUND

The Court has scheduled a trial for May 22, 2023 to address whether defendant's actions

in state court were acts of contempt in the main bankruptcy case here (No. 1:14-bk-10745-SDR,

the "Main Case"); and whether plaintiff's objection to defendant's Claim 16 in the Main Case should be sustained.[1]

Pending before the Court is a motion *in limine* by plaintiff to preclude defendant from offering certain testimony at trial under Tennessee's "Dead Man's Statute," Tenn. Code Ann. § 24-1-203. Specifically, plaintiff wants "to exclude any testimony of James L. Henry regarding any communications with him and B. Allen Casey because such communications are prohibited by T.C.A. § 24-1-203 Transactions with decedent or ward–Dead man's statute." (Doc. No. 202 at 2.) At the final pretrial conference on May 10, 2023, plaintiff elaborated that he is targeting any statements that Allen Casey ("Allen"), the deceased former principal of the debtor, allegedly would have made that would clarify the nature of the legal services for which defendant seeks recovery. Defendant filed Claim 16 in the Main Case for $1,232,403.41 of legal services that he performed for the debtor. Plaintiff has objected to the amount of the claim as "overstated" (Doc. No. 1 at 6 ¶ 30) and alleges that there is "insufficient documentation" to support the amount requested (*id.* ¶ 31). Plaintiff further asserts that "[t]he amount claimed is owed by others and not this Debtor. Much of the work performed by Henry for which he is asserting claims against this Bankruptcy Estate were performed for and on behalf of Allen B. Casey individually." (*Id.* ¶ 32.) Whether the objection is based on 11 U.S.C. § 502(b)(1) or § 502(b)(4) it is not clear. With respect to the issues of insufficient documentation of which party was billed at a given time, the Court previously identified line items in defendant's billing, totaling 1,037.5 billed hours and $378,728.50, that were ambiguous as to whether defendant performed services for the debtor or Allen individually. (Doc.

---

[1] This adversary proceeding and the Main Case have a long history before the Court, and the Court has written extensively in the past about the major events that have occurred and the principal issues between the parties. For the sake of brevity, the Court will presume familiarity with the background of the debtor, of the Main Case, and of this adversary proceeding.

No. 156 at 15.)  Plaintiff explained in more detail in his trial brief why defendant's legal billing is

ambiguous and why Claim 16 should be reduced by the amount that the Court identified:

> Henry has provided the Trustee with 97 pages of invoice detail which
> compromise a total of four invoices sent to Alan [sic] Casey over four years.  In the
> detail for the billing Henry consistently uses vague descriptions making it
> impossible to determine whether the legal work performed was for Alan Casey as
> an individual or for the Debtor.
>
> In the bills provided to the Trustee, Henry uses the phrase "prepare
> documents" and "legal analysis and advice" with no description as to the subject of
> work.  The phrase "prepare documents" is repeated 314 times and "legal analysis
> and advice" is repeated 456 times.  Because Henry does not give a description of
> the subject or basis for the work, it is impossible to determine if the work hours
> billed were for Alan Casey personally or for the Debtor, or even if the work was
> performed.  Henry also uses several different phrases to state that he had
> conferences with Alan Casey, but never described what these conferences were
> regarding.  In some instances Henry stated "conference with Alan Casey regarding
> business matters" and others "conference with Alan Casey regarding business legal
> matters."  However, Henry never mentions the Debtor specifically in these billing
> descriptions, nor does he reference any specific matter or transaction to which they
> relate.  The vague descriptions totaled 1037.5 billed hours and a total of
> $378,728.50 billed.
>
> Henry agreed during his deposition that the claim is for prepetition legal
> services provided to "the debtor and/or Alan Casey."  Henry also states in his
> deposition that he did not bill Alan Casey separate from the Debtor.

(Doc. No. 199 at 8.)  In this context, plaintiff is concerned that defendant will attempt to backfill

details of his legal billing with purported statements from Allen that are unverifiable.

Defendant opposes the motion on the basis that T.C.A. Section 24-1-203 does not apply to

this adversary proceeding or to either party:

> For the Dead Man's Statute to apply, it must be a proceeding involving an executor,
> administrator or guardian.  This is not such a proceeding.  The Plaintiff, while he
> may be the Trustee in bankruptcy, is not an executor, administrator or guardian of
> River City Resort, Inc. or Allen Casey.  He has not been issued letters of
> administration, letters testamentary, or guardianship as required by T.C.A.§ 30-1-
> 101 and T.C.A.§34-1-104.  He has not succeeded too the interests of Allen Casey.

Allen Casey has no right or interest in the matter at issue, and the interests of James Henry are not adverse to Mr. Casey. This matter concerns the claims of Henry in this Bankruptcy estate, and Federal Rules of Evidence 601 would apply federal law rather than state law evidence rules here. *See In re Groshans*, 114 B.R. 258, 261 (D. Col. 1990) (State Dead Man's statute was not applicable in discharge proceeding).

Likewise, River City Resort, Inc. is not a "testator, intestate, or ward" as those terms are recognized under Tennessee law. River City Resort, Inc. is a corporation. It cannot make a will, "die intestate," or be the ward under a conservatorship.

(Doc. No. 214 at 2.)

## II. DISCUSSION

### A. Federal Evidence Rules and T.C.A. Section 24-1-203

In the motion *in limine*, plaintiff relies on Federal Rule of Evidence 501, and its incorporation of state law, to govern privilege for cases in which state law supplies the rule of decision. After a review of the relevant rules, the Court believes that the better place to start is Federal Rule of Evidence 601. Under Federal Rule of Evidence 601, "[e]very person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. The 1972 Advisory Committee Notes to the original enactment of Rule 601 mention "the so-called Dead Man's Acts" explicitly and consider them rules of competency, not privilege. *Id.* Adv. Cmte. Note (1972).[2]

---

[2] In referring to statutes like T.C.A. Section 24-1-203, the Advisory Committee made clear that Rule 601 contains "no provision of this kind" and "eliminates all grounds of incompetency not specifically recognized in the succeeding rules of this Article." Fed. R. Evid. 601 Adv. Cmte. Note (1972). To the extent that T.C.A. Section 24-1-203 nonetheless creates a conflict between competency under Rule 601 and privilege under Rule 501, the Advisory Committee indicated that Rule 601 and the inclusion of the evidence should prevail. *See* Fed. R. Evid. 501 Adv. Cmte. Note (1974) ("If the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rule favoring reception of the evidence should be applied."). Plaintiff's citation to Rule 501, as the gateway to the T.C.A. Section 24-1-203, would have to yield to the leniency of Rule 601.

Although Rule 601 provides the federal rule of witness competency, the Court needs to consider that rule's exception: State law provides the rules of witness competency if state law also governs the substantive causes of action.  When a bankruptcy claim concerns a breached attorney fee agreement under state law, "[t]he proper mode of analysis . . . is: (1) an acknowledgment or determination that the fee contract was breached; (2) an assessment of the damages for the breach under state law; (3) a determination under section 502(b)(4) of the reasonableness of the damages claim afforded by state law; and (4) a reduction of the claim by whatever extent, if any, it is deemed excessive."  *McProud v. Siller (In Re CWS Enterprises, Inc.)*, 870 F.3d 1106, 1115–16 (9th Cir. 2017) (citing *In re W. Real Est. Fund, Inc.*, 922 F.2d 592, 597 (10th Cir. 1990)).  Here, the parties do not dispute that the debtor retained defendant to perform various legal services; that the debtor signed a promissory note to pledge real property as collateral for defendant's legal bills; and that a contract existed between the debtor and defendant that would be enforceable under state law.  Plaintiff's objection to a portion of defendant's Claim 16 might not require interpretation of contractual language under state law.  *Cf. In re Hawkeye Chem. Co.*, No. 86-3231-D, 1988 WL 1571405, at *3 (Bankr. S.D. Iowa Apr. 18, 1988) (claim allowed for enhanced severance pay following termination; circumstances of termination determined not to fall under the "for cause" provision of the contract that would have disallowed payment).  In fact, plaintiff is not even disputing that defendant performed legal services for *somebody*, and that the hours billed might be

---

For the sake of additional background, "[p]rior to the enactment of Rule 601, federal courts routinely applied state Dead Man's Acts in civil cases, since state law governed questions of competency.  Doubting the effectiveness of the Dead Man's Acts, the Advisory Committee originally drafted Rule 601 to avoid requiring federal courts to follow state law on the issue of competency of witnesses.  The original version of Rule 601 contained only its present first sentence.  Congress rejected this version and added the second sentence to Rule 601, to reflect the *Erie* doctrine."  *Legg v. Chopra*, 286 F.3d 286, 290 n.2 (6th Cir. 2002) (citations omitted).

reasonable under 11 U.S.C. § 502(b)(4) and a lodestar analysis if the documentation clarified who was benefiting from the services. *See In re W. Real Est. Fund, Inc.*, 922 F.2d at 597 ("While, as already noted, state law determines the available contract damages arising from breach of a legal services agreement for purposes of section 365(g), at the subsequent stage in the analysis mandated by section 502(b)(4) a federal standard should guide the court in its judgment regarding the reasonableness of such damages in the context of bankruptcy.") (citations omitted). Plaintiff is arguing only that a portion of Claim 16—1,037.5 billed hours and $378,728.50 total—should not be *paid by this bankruptcy estate* because of ambiguities over whether the recipient of those services had been the debtor or Allen personally. Plaintiff's objection thus falls under federal bankruptcy procedures governing disputed claims and adequate documentation of a claim that would be paid by the bankruptcy estate. The Court's analysis is consistent with the same principle used in the context of oversecured creditors and 11 U.S.C. § 506(b): "Enforceability and reasonableness are not the same thing—a fee is not necessarily reasonable just because it is enforceable. Therefore, even if contractually set attorney's fees owed to oversecured creditors are enforceable under state law because they are vested and comply with state notice procedures, it does not follow that the fees are *per se* reasonable under the Bankruptcy Code." *Welzel v. Advocate Realty Investments, LLC (In re Welzel)*, 275 F.3d 1308, 1315 (11th Cir. 2001) (citation omitted). For the above reasons, the Court concludes that the particular challenge that plaintiff has raised to Claim 16 is proceeding under federal bankruptcy procedures, meaning that T.C.A. Section 24-1-203 does not apply.

### B.  Elements of T.C.A. Section 24-1-203

Alternatively, even if the Court decided that T.C.A. Section 24-1-203 supplied the rule of competency here, the elements of the statute would require further attention. T.C.A. Section 24-

1-203 reads as follows in its entirety:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24-1-203. "The purpose of the Dead Man's Statute is to protect estates from spurious claims and prevent interested parties from giving self-serving testimony regarding conversations or transactions with the deceased when the testimony involves transactions or statements that would either increase or decrease the deceased's estate. The statute is designed to prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of his executor's version of the transaction or statement." *Mitchell v. Johnson*, 646 S.W.3d 754, 765 (Tenn. Ct. App. 2021), *appeal denied* (Mar. 23, 2022) (internal quotation marks and citations omitted). The references in the text of the statute to executors, administrators, testators, and intestate people strongly indicate that T.C.A. Section 24-1-203 is a probate-related statute and that the executors or administrators in question need to be executors or administrators of a probate estate. The references in the case law to statements that would increase or decrease a decedent's estate further reinforce the Court's sense that T.C.A. Section 24-1-203 aims to prevent witnesses, in the absence of any other evidence to the contrary, from making themselves the probate beneficiaries of a decedent through statements that are unverifiable.[3] *See Baker v. Baker*, 142 S.W.2d 737, 744 (1940) ("Having in mind that the general purpose of the statute undoubtedly is to protect the estates of decedents from fraudulent and

---

[3] Incidentally, the Court reads the second sentence in T.C.A. Section 24-1-203 to mean only that a corporate entity trying to make itself a probate beneficiary would testify through an officer or director.

fictitious claims and the strict construction adopted by our court against the exclusion of the testimony, we think it a reasonable view that the statute does not contemplate a proceeding, the result of which can neither increase nor diminish the assets of the estate but concerns only the manner in which the assets will be distributed.").  Tennessee courts consistently have read the statute narrowly to prevent its application beyond the probate context and to prevent a greater exclusion of testimony than necessary.  *See, e.g., Holliman v. McGrew*, 343 S.W.3d 68, 73 (Tenn. Ct. App. 2009) ("Because it is an exception to the general rule, the statute must be strictly construed against the exclusion of testimony and in favor of its admission.") (citation omitted); *accord Boote v. Shivers*, 198 S.W.3d 732, 744 (Tenn. Ct. App. 2005) ("[T]he Tennessee Supreme Court has repeatedly instructed that it [*i.e.*, the statute] must be construed narrowly in favor of the admission rather than the exclusion of evidence.") (citations omitted).

The text of T.C.A. Section 24-1-203, the case law interpreting it, and the principle of narrow construction combine to create three elements that must be satisfied before the statute would preclude testimony:

1)   The action or proceeding in question must be a probate-related proceeding by or against a legal representative of a decedent's probate estate, with the possibility of increasing or decreasing the decedent's estate;

2)   "[T]he proposed witness must be a party to the suit in such way that judgment may be rendered for or against him," *Leffew v. Mayes*, 685 S.W.2d 288, 293 (Tenn. Ct. App. 1984); and

3)   "[T]he subject matter of the testimony must be concerning some transaction with or statement by the testator."  *Id.*

This adversary proceeding might satisfy the second and third elements but not the first.  Defendant is a party to this adversary proceeding, and judgment ultimately will be rendered for or against him.  The testimony that would be precluded does concern statements of a decedent, namely Allen

Casey.  With respect to the first element, though, this adversary proceeding does not concern Allen's probate estate.  Plaintiff is not a legal representative of Allen's probate estate; he is instead a trustee of the debtor's bankruptcy estate.  *See Ramco-Remodel Am. Corp. v. Wallis (In re Ramco-Remodel Am. Corp.)*, 536 B.R. 206, 210 (Bankr. W.D. Tenn. 2015) (former attorney of a current party could testify about the details of settlement negotiations leading to a consent order; the adversary proceeding concerned whether the consent order covered all parties and was not an action "by or against executors, administrators, or guardians" as required by T.C.A. Section 24-1-203).  Finally, should defendant prevail and have his claim allowed in its entirety, the estate that would be debited is the debtor's bankruptcy estate, not Allen's probate estate.  Under these circumstances, T.C.A. Section 24-1-203 simply would not apply to these proceedings.  The Court anticipates that competency and the hearsay exceptions for unavailable declarants will be the applicable evidence rules to address plaintiff's concern.

## III.   CONCLUSION

For all of the foregoing reasons, the Court will deny plaintiff's motion *in limine* (Doc. No. 202).  A separate order will follow.

# # #